# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| Thomas J. Sanduski, | Case No.: 2:19-cv-01340-JAD-BNW |
| Plaintiff | |
| v. | **Order Confirming Arbitration Award** |
| Charles Schwab & Co., Inc., | [ECF Nos. 8, 14] |
| Defendant | |

Thomas Sanduski petitions to vacate a Financial Industry Regulatory Authority (FINRA) arbitration award finding him liable to Charles Schwab & Co., Inc. for failing to pay his unsecured debit balance.  Sanduski raises two issues for vacatur: (1) one of the arbitrators was partial to Charles Schwab and (2) the panel was guilty of misconduct, and potentially exceeded its authority, for refusing Sanduski's request to postpone the hearing.[1]  Charles Schwab countermoves to enforce the award.[2]  Sanduski has not met his heavy burden of proving that the two limited contacts between one of his arbitrators and Charles Schwab's experts demonstrated actual bias or prejudicial non-disclosure sufficient to justify vacatur under 9 U.S.C. § 10(a)(2). Nor has Sanduski shown that the panel's reasonable rejection of his mid-hearing postponement request was arbitrary or showed manifest disregard of the law, as required under §§ 10(a)(3) and 10(a)(4).  So, I deny Sanduski's petition and grant Charles Schwab's countermotion, confirming the award in its entirety.

---

[1] ECF No. 14 (motion to vacate arbitration award).

[2] ECF Nos. 7 (opposition to motion to vacate); 8 (motion to confirm arbitration award).

**Background**

Charles Schwab sought $418,518.14 from Sanduski in a FINRA arbitration proceeding, claiming that Sanduski breached the terms of his Schwab One Account Agreement by failing to pay his unsecured debit balance.[3] The parties do not appear to contest the underlying substance of their dispute or that the FINRA rules of arbitration apply,[4] but instead focus on irregularities at the hearing and impropriety after its conclusion. Because the dispute involved more than $100,000, FINRA Rule 12401 required arbitration by a panel "of three arbitrators, unless the parties agree in writing to one arbitrator."[5] Rule 12601 governs postponements and provides that postponement requests made within ten days of the hearing date will only be granted if the panel "determines that good cause exists."[6] Rule 12210 cautions the parties against "ex parte communications," noting that "no party . . . may communicate with any arbitrator outside of a scheduled hearing or conference regarding an arbitration unless all parties or their representatives are present."[7] Finally, the FINRA Chairperson Training Manual advises arbitrators to be cognizant of Rule 12208 and Canon IV C of the Code of Ethics, noting that Rule 12208 states that "arbitrators should not deny any party the opportunity to representation."[8]

The two-day hearing was initially scheduled to begin January 31, 2019, but was postponed by two months at Sanduski's request because his counsel had withdrawn.[9] Sanduski

---

[3] ECF No. 14 at 10 (arbitration order).
[4] ECF Nos. 7-1 at ¶ 4; 8-1 at 18; 14 at ¶¶ 4–5.
[5] ECF No. 21-1, Ex. 14 at 1, Ex. 16 at 2.
[6] ECF Nos. 7-1, Ex. 4 at 1; 8-1, Ex. 4 at 1.
[7] ECF Nos 7-1, Ex. 8 at 1; 8-1, Ex. 8 at 1.
[8] ECF No. 14 at 22.
[9] ECF Nos. 7-1 at ¶ 5; 8-1 at ¶ 5.

did not secure new counsel and appeared without representation at the March 27th hearing.[10] During the first day of the hearing, Arbitrator Geddes discovered that he would be unable to physically attend the hearing on the second day because of a "family emergency."[11] The panel offered the parties the option to postpone the hearing, proceed with only two panelists, or permit Geddes to participate by phone on the second day.[12] Both parties selected the third option and Geddes chose to attend the hearing remotely.[13]

But when that day arrived, Sanduski expressed reservations about Geddes's virtual attendance and asked to postpone the hearing a second time so that he could secure representation.[14] Chairperson Edmonson reviewed the training manual and cited rules, and he determined that good cause did not exist for the postponement.[15] He interpreted Rule 12208 and the training manual materials as counseling postponements where parties had never been represented; because Sanduski's counsel had withdrawn, and Sanduski had not secured new counsel in the intervening two months, Edmonson believed further postponement was "inappropriate" and "delay[ed] the process unduly."[16] Based on the record before me, Sanduski did not raise with the panel that Geddes's virtual attendance violated any FINRA Rules.

The specter of impropriety surfaced at the hearing's close. After argument ceased and the parties filed out, one of Charles Schwab's experts said "see you next week" to Arbitrator

---

[10] ECF Nos. 14 at 11; 17 at 15–16.

[11] ECF No. 14 at ¶ 6.

[12] *Id*. at ¶ 7.

[13] *Id.* at ¶ 9.

[14] *Id.* at ¶ 11.

[15] ECF No. 17 at 47; *see also* ECF No. 14 at ¶¶ 11–13.

[16] ECF No. 17 at 48.

Grinnell.[17] Though Grinnell did not respond to or acknowledge the statement, the parties agree this was likely a reference to Grinnell's empanelment on a second Charles Schwab arbitration, which would involve that same expert witness.[18] After Grinnell made her decision and learned that she would not be involved in writing the order, Grinnell left the arbitration and called a car for the airport.[19] Noticing that a different Charles Schwab expert witness was also going to the airport, Grinnell chose to share a ride.[20] Grinnell warned the expert that she could not discuss the preceding arbitration and they chatted exclusively about living in Phoenix.[21] In May 2019, the panel issued its order, awarding Charles Schwab $418,518.14 in damages.[22]

## Discussion

**A.    Standard for reviewing an arbitration award**

The Federal Arbitration Act (FAA) permits any party to apply to the court to confirm, vacate, modify, or correct an arbitration award.[23] "[F]ederal court review of arbitration awards is extremely limited,"[24] and an award must be confirmed unless it is vacated, modified, or corrected on the grounds described in the FAA.[25] An award may be vacated if: (1) it was procured by corruption, fraud, or undue means; (2) "there was evident partiality or corruption in the arbitrators;" (3) "the arbitrators were guilty of misconduct in refusing to postpone the

---

[17] ECF No. 14 at ¶ 15, Ex. A at 3; *see also* ECF No. 7 at 12.

[18] ECF No. 14 at ¶ 15; *see also id.* at 12.

[19] *Id.*; *see also id.* at 29–30.

[20] *Id.* at 29–30.

[21] *Id.*

[22] *Id.* at 11.

[23] 9 U.S.C. §§ 9, 10, 11.

[24] *A.G. Edwards & Sons, Inc. v. McCollough*, 967 F.2d 1401, 1403 (9th Cir. 1992) (citation and quotations omitted).

[25] *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 582 (2008) (citing 9 U.S.C. § 9).

4

hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced;" or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."[26]

Sanduski marshals two of these theories against the arbitrator's award in this case: (1) one arbitrator on the panel was "impartial" and (2) the arbitrators committed misconduct by refusing to postpone his hearing. He also implies that the panel "exceeded [its] powers" in offering a semi-telephonic hearing as further support for his misconduct claim. As I explain below, his allegations do not justify the severe remedy of vacatur and I confirm the award.

**B.    Waiver**

As a preliminary matter, Charles Schwab argues that Sanduski waived his right to protest the panel's impartiality because he had actual notice of Grinnell's interactions with their witnesses and failed to object before receiving the panel's decision. While the Ninth Circuit has held that the waiver doctrine applies when a petitioner had knowledge of an arbitrator's potential bias prior to the hearing but failed to object until after a decision was made,[27] it is unclear whether a petitioner necessarily waives his right to object when the basis for partiality only emerges after the hearing concludes. I also take note that Sanduski asserts that he contacted

---

[26] 9 U.S.C. § 10(a).

[27] *See, e.g.*, *Johnson v. Gruma Corp.*, 614 F.3d 1062, 1069 (9th Cir. 2010) (finding waiver where the party knew for a least "a year or two" of the prior professional relationship between the arbitrator and opposing counsel's spouse before the arbitrator ruled); *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 386 F.3d 1306, 1313 (9th Cir. 2004) (holding, in a case where a party had knowledge of an arbitrator's potential bias prior to the hearing, that the waiver doctrine applies if the party does not object until after the arbitration decision); *Sheet Metal Workers Intern. Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) ("Finally, [claimant] failed to object to the selection of the [arbitration panel] at the time they were seated and has thereby waived this objection.").

5

FINRA twice regarding Grinnell's conduct prior to receiving the panel's determination.[28] Accordingly, while I hold that Sanduski has not waived his claim, I still deny his petition for vacatur and confirm the award because he has not shown that the panel was partial or committed misconduct.

**C.     Both of Sanduski's challenges fail.**

    **1.** *Sanduski fails to establish that the arbitrator was evidently partial or corrupt.*

To show "evident partiality," Sanduski must "establish specific facts indicating actual bias toward or against a party" or demonstrate that his arbitrators "failed to disclose to the parties information that creates '[a] reasonable impression of bias.'"[29] In actual-bias cases, the "appearance of impropriety, standing alone, is insufficient."[30] While it is unclear whether Sanduski argues that this is a case of actual bias or non-disclosure, he has failed to present sufficient evidence of partiality under either theory to support vacatur.

Charles Schwab's expert's acknowledgement that he would see Grinnell in a subsequent hearing, and Grinnell's choice to share a ride to the airport with another Charles Schwab expert after entering her decision in this matter, are the type of "attenuated" and "insubstantial connections between a party and an arbitrator" that the Ninth Circuit rejects as grounds for vacatur.[31] Sanduski's citation to *Monster Energy Co. v. City Beverages, LLC* does not persuade

---

[28] ECF No. 17 at 10.

[29] *Lagstein v. Certain Underwriters at Lloyd's London*, 607 F.3d 634, 645–46 (9th Cir. 2010) (quoting *Woods v. Saturn Distrib. Corp.*, 78 F.3d 424, 427 (9th Cir. 1996)) (alteration in original).

[30] *Woods*, 78 F.3d at 427 (quoting *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985)) (quotation marks omitted).

[31] *New Regency Prods., Inc. v. Nippon Herald Films, Inc.*, 501 F.3d 1101, 1110 (9th Cir. 2007).

me otherwise.[32] There, the arbitrator failed to disclose his ownership interest in the parties' arbitration company, which had a significant business relationship with and benefited from repeat arbitration hearings involving Monster Energy Co.[33] No such ongoing financial or personal relationship exists here. Indeed, the passing communication between Grinnell and Charles Schwab's experts—the majority of which took place after a decision had already been made—evince merely the "trivial" contact any arbitrator might have with a recurring, corporate defendant.[34] The Ninth Circuit consistently denies vacatur in alleged-partiality cases where arbitrators and parties have far more substantial contacts.[35]

Even if the communications between Grinnell and Charles Schwab's experts were improper, Sanduski has also failed to demonstrate that "any prejudice resulted from the [] contacts."[36] While perhaps inappropriate, the majority of Grinnell's interactions with Charles Schwab's witnesses took place after she'd made her decision and determined that she would not

---

[32] *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130 (9th Cir. 2019).

[33] *Id.* at 1136.

[34] *In re Wal-Mart Wage and Hour Emp. Practices Litig.*, 550 Fed. Appx. 373, 374 (9th Cir. 2013) ("To the extent the arbitrator failed to disclose his role as arbitrator in the *Smokeless Tobacco* cases, it was a 'trivial' relationship without the type of direct financial connections that raise concern and need not have been disclosed.") (citing *Commonwealth Coatings Corp. v. Cont'l Cas. Co.*, 393 U.S. 145, 150 (1968) (White, J., concurring). In fact, the relationship between industry and arbitrator is considered one of the benefits of the arbitral system. *Id.* at 1490.

[35] *See, e.g.*, *Woods*, 78 F.3d at 424 (upholding denial of vacatur despite the arbitration panel being composed of defendant's franchise operators); *Lagstein*, 607 F.3d at 646.

[36] *Emp. Ins. of Wausau v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 933 F.2d 1481, 1490 (9th Cit. 1991) (citing *Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co. Ltd.*, 868 F.2d 52, 57 (3d Cir. 1989)); *see also In re Wal-Mart Wage and Hour Emp. Practices Litig.*, 550 Fed. Appx. at 375 ("The district court correctly concluded that the arbitrator did not engage in misconduct, and that even if he did, the Burton Group did not establish that the alleged misconduct prejudiced them.").

7

be involved in writing the order.[37]  As she put it, "[f]rom my point of view, the case was over."[38] And Charles Schwab's expert's acknowledgment that he would appear before Grinnell in a separate hearing is hardly the "sinister or inherently one-sided" contact that could prejudice an award or infect a decision with bias.[39]  In fact, Sanduski provides no evidence whatsoever that these communications affected Grinnell's decision or caused him "any disadvantage."[40]  So, I reject this as a ground for vacating the award.

### 2. *Sanduski fails to show that the panel committed misconduct.*

"[T]he arbitrary denial of a reasonable request for postponement may serve as grounds for vacating an arbitral award."[41]  However, "[c]ourts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists."[42]  This panel's decision to continue with the hearing was far from arbitrary.

When Sanduski moved for a postponement on the second day of his two-day hearing to seek counsel, Edmonson listened to the arguments of both parties and articulated multiple reasons to deny the request.  He noted that both parties had already agreed at the beginning of the hearing that Geddes could participate telephonically on the second day.[43]  He also stated that

---

[37] ECF No. 14 at 12.

[38] *Id.*

[39] *Emp. Ins. of Wausau*, 933 F.2d at 1491.

[40] *Am. Tel. & Tel. Co. v. United Comput. Sys., Inc.*, 7 Fed. Appx. 784, 788 (9th Cir. 2001).

[41] *Sheet Metal Workers Intern. Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 746 (9th Cir. 1985) (citing *Fairchild & Co. v. Richmond, Fredericksburg & Potomac R.R. Co.*, 516 F. Supp. 1305, 1313 (D.D.C. 1981)).

[42] *Sunrise Trust v. Morgan Stanley & Co. Inc.*, No. 2:12-cv-944, 2012 WL 4963766, at *4 (D. Nev. Oct. 16, 2012), *aff'd Sunrise Trust v. Morgan Stanley & Co., Inc.*, 552 Fed. Appx. 685, 686 (9th Cir. 2014) (quoting *El Dorado Sch. Dist. No. 15 v. Cont'l Gas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001)) (internal quotation marks omitted).

[43] ECF No. 14 at 11.

Sanduski had been given sufficient time to seek representation if he so desired, given that his prior counsel withdrew more than two months before the hearing.[44] These justifications alone are sufficient to show that the panel did not arbitrarily deny Sanduski's request.[45]

Sanduski argues that Geddes's virtual attendance might have prejudiced him: because Geddes could not see the proceedings, he would not notice the physical interactions between defense witnesses and counsel, and it would be "impossible" to know if Geddes were listening the entire time.[46] Even so, I'm not persuaded that Geddes's telephonic presence did anything more than deny Sanduski a "perfect" hearing as opposed to a "fair" one, which is insufficient grounds for vacatur in the Ninth Circuit.[47]

In his reply briefing, Sanduski also appears to argue that the initial offer of the partially telephonic hearing to accommodate Geddes, and the panel's subsequent rejection of Sanduski's postponement request, exceeded the panel's authority under FINRA Rules 12401, 12208, and 12601.[48] "It is not enough for petitioners to show that the panel committed an error—or even a serious error. 'It is only when [an] arbitrator strays from the interpretation and application of the agreement and effectively "dispense[s] his own brand of industrial justice" that [a] decision may

---

[44] *Id.*

[45] *Accord Sunrise Trust*, 552 Fed. Appx. at 686 (upholding confirmation of arbitration award where claimant alleged that the arbitration panel arbitrarily denied his reasonable request for postponement).

[46] ECF No. 17 at 14.

[47] *Employers Ins. of Wausau*, 933 F.2d at 1491.

[48] Sanduski does not formally present this ground for vacatur, which is generally a 9 U.S.C. § 10(a)(4) claim, as distinct from his misconduct claim under § 10(a)(3), but instead argues that the chief arbitrator "rewrote the agreement with his own sense of fairness" and denied him "due process" under the FINRA rules by rejecting his postponement request. *See* ECF No. 17 at 19.

be unenforceable.'"[49] Accordingly, arbitrators exceed their powers only when the award is "completely irrational" or "exhibits a 'manifest disregard for the law.'"[50]

      Here, the panel expressly considered Rules 12208 and 12601[51] in deciding whether to grant Sanduski's request to postpone the hearing and determined that Sanduski had not shown "good cause" sufficient under the FINRA Rules to justify the postponement. Edmonson reviewed the training manual, which contained reference to the rules, and reasoned that postponement would be "inappropriate" because Sanduski had already had counsel, that counsel had withdrawn months earlier, and Sanduski had chosen not to find new counsel.[52] Edmonson's interpretation and application of the rules was reasonable and it is not within my power "to determine whether the arbitrator committed an error, even a serious error, in interpreting" the FINRA Rules.[53] Sanduski also presents no evidence that the panel considered and disregarded FINRA Rule 12401 in offering a partially virtual panel. Accordingly, it is not "clear from the record that the arbitrators recognized the applicable law and then ignored it" as is required to vacate an award under § 10(a)(4).[54]

      In fact, this panel's decision to continue with the semi-virtual hearing is not only reasonable, but it does not appear to meaningfully deviate from FINRA Rule 12401, which

---

[49] *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671 (2010) (citations omitted) (alterations in original).

[50] *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F.3d 987, 997 (9th Cir. 2003) (en banc) (citations omitted).

[51] ECF Nos. 17 at 15; 21 at 20–21.

[52] ECF No. 17 at 47–48.

[53] *Sanchez v. Elizondo*, 878 F.3d 1216, 1223 (9th Cir. 2018).

[54] *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 665 (9th Cir. 2012) (quoting *Lagstein*, 607 F.3d at 641)); *see also Sanchez*, 878 F.3d at 1223 ("The arbitrator did not violate directly the parties' initial agreement by relying upon rules other than the FINRA Rules that the agreement deemed applicable.").

makes no mention of whether a panel hearing requires the arbitrators to be physically present. Sanduski had a three-person panel, which is what the rule requires. Permitting Geddes to participate via telephone is likely a procedural alteration, which would not be grounds for vacatur.[55] Accordingly, I find that the panel's denial of Sanduski's postponement request was not misconduct under § 10(a)(3).

### Conclusion[56]

IT IS THEREFORE ORDERED that the arbitrator's award is confirmed in its entirety. Sanduski's petition to vacate the award **[ECF No. 14] is DENIED**, and that Charles Schwab's countermotion to confirm the award **[ECF Nos. 7 and 8] is GRANTED**.

IT IS FURTHER ORDERED that the Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: August 20, 2020

_____
U.S. District Judge Jennifer A. Dorsey

---

[55] *See Biller*, 668 F.3d at 666 (reasoning that "failure to provide a written decision to facilitate judicial review, even though required by the Severance Agreement" does not support vacatur under the FAA).

[56] Charles Schwab asks me to take judicial notice of the briefing, order, and judgment entered in *Charles Schwab & Co., Inc. v. Jay Z Hu*, Case No. A-19-794608-P. ECF Nos. 7-2; 8-2. Because these documents do not affect my decision, I decline the request.